Shaokeleord, J.,
delivered the opinion of the Court.
It appears, from this record, the defendant, Samuel G-uggenheim, was, in the fall of 1865, a merchant in Jonesboro’, Tenn., having previously resided in Knoxville and Cincinnati. In the fall of that year, he pur *286 chased from the complainant, and others, in the City of Cincinnati, about $25,000 worth of goods, and brought them to his place of business. During the fall, he paid to his creditors, from whom he had made the purchases, about $5,000. At the time he purchased the stock, he represented he was possessed of large means; that he had a number of boxes of tobacco at Louisville, and produce in other cities. During the winter, the creditors in Cincinnati becoming uneasy about their claims, sent their agents to Tennessee, to secure their debts. The defendants promised them, from time to time, to make some arrangement, and pay a part. He gave to the agent of Rindskoff & Bro., two drafts for about $1,500 — one on a house in Lynchburg, Va., and one on a house at Atlanta, Ga. — he having previously sent to the house at the first place, liquors and other goods, of the value of $2,500, and to the latter place, of the value of $1,000. The goods not having been sold, the drafts were not accepted. The defendant had divided his stock, and was selling at four different points in the county. The agents of the plaintiffs, upon the non-payment of the drafts, returned to Jones-boro, and were very pressing in their demands for the settlement of their claims, the defendant promising payment as soon as he could receive money from -his different places of business. The trade of the country had become dull, and few sales were effected. In this condition of things, on the night of Eeb-ruary, 1866, the defendant, Samuel Guggenheim, made an assignment of this stock of goods, at his several *287 places of Business in the county, to Herman Cone, (The stock was valued at about thirteen thousand dollars,) to secure his creditors. By the assignment, the creditors in Washington County, Tenn., are to he first paid; 2d. The debts due certain parties in Pennsylvania, whose names and debts are specified in the deed.
The defendant, Guggenheim, was indebted to his co-defendant, Cone,in the sum of $1,500; for the payment of which, he transferred to him, absolutely, the goods at his store at -, of which Cone had the management, worth about that sum. The deed recites, “For the benefit of the creditors, the said Cone shall take, as assignee, the immediate possession of the goods and property, and shall proceed to take charge of, and conduct the sale of, the goods, by retail, for cash or produce; and the proceeds thereof shall be disposed of as follows:
“The State and County tax shall be paid first; then the costs of executing this assignment, including stamps, lawyer’s fees, etc.; then the debts due to all of said creditors residing in Jonesboro and Washington County; and, from the present state of the country, as it will be ruinous to said creditors, as well as to said Guggenheim, that the said goods should be sold at public auction, the said assignee is to employ clerks, including said Guggenheim, giving them fair and competent salaries; and, if need be, to make the goods realize the most profit for the creditors, he shall replenish said stock of goods, by such cash purchases, from time to time, as shall be judicious *288 and merchant-like, keeping constantly in view, tlie greatest benefit to the creditors. Shall continue the business at Leesburg on the same terms; and so of the stock at Swingle’s, if he think it best to do so, at his option. The business to be carried on for twelve months; and after satisfaction of said preferred creditors, the next claims are to those creditors residing in Pennsylvania; then to the remainder of his creditors, pro rata.”
The preferred debts amount to about seven or eight thousand dollars. If the debts are not paid within twelve months, the stock is to .be sold at auction, within thirty days thereafter, and the proceeds to be distributed, according to the terms of the deed. The assignment was duly registered. The trustee, under the provisions of the Code, gave bond, in the sum of $10,000, for the faithful execution of the trust.
After the execution of the deed, the complainants, who are the merchants of whom he purchased the goods, filed their attachment bill in the Chancery Court at Jonesborough, in which they aver the assignment was made to hinder and delay the creditors of the assignor; that it is fraudulent and void. An attachment was ordered, and the goods were seized by the Sheriff. The answer of the defendant denies the fraud, and insists that his object and purpose, was, to secure the payment of his debts; that he had the right to prefer certain creditors. Owing to the pressure of the times, he was unable to meet his liabilities; and, to prevent a ruinous sacrifice of his property, and pay his debts, he executed the deed. It ap *289 pears, the goods were bought at high prices, and many of them not suited to the market. It appears, the trustee is a good merchant, and well-fitted to carry on the business.
On the hearing, the Chancellor was of the opinion the deed was made to hinder and delay the creditors of the defendant, therefore was fraudulent. It was set aside, and the assets placed in the hands of a receiver; from which decree the defendant appealed to this Court.
It is insisted for the complainants, that the terms and stipulations in the deed, render it fraudulent in law: 1st, The time of thirteen months, to close the deed, is such delay, that, per se, renders it fraudulent. 2d, The stipulation, that the assignee should employ the assignor as one of the clerks to conduct the business, is such a reservation of an interest, that vitiates the deed. 3d, The power given the trustee, to re-invest the funds so as to keep up the stock, are facts and circumstances, combined with the other provisions of the deed, that renders it fraudulent; and that these circumstances, combined with the extrinsic facts of the case, if the terms and stipulations of the deed do not render it fraudulent in law, make it fraudulent in fact.
It is a well settled principle in the jurisprudence of Tennessee, a debtor in failing circumstances may make an assignment of his property, to secure one class of creditors and postpone another. If this is done with the bona fide intent to secure the payment of a debt, it is not fraudulent. We think there is not that de *290 lay in this deed, that per se evinces an intent to delay and binder the creditors, in the legal sense of the term. In the case reported in 8 Yer., 134, the time stipulated was three years; the projmrty was to remain in the possession of the debtor during that period, and all other creditors were necessarily delayed from getting the surplus. If partial payment had been made, in the mean time the debtor has the use and possession of the property, such a deed, by the intendment of the law, would be fraudulent and void. In the case of Mitchell vs. Reed, referred to, the Court say: “The mere fact, that Harmon & Welson retain the property, is it a prima facie evidence of fraud? If the time given had been reasonable, such, for instance, as to have been equivalent to the law’s delay, the possession was consistent with the deed, and, as a fact, itself, would not constitute ground for setting it aside.”
In the case under consideration, the property passed immediately into the possession of the trustee, who had executed his bond for the faithful discharge of his trust. He is proven to be a man of character, and a good merchant. From these facts and circumstances, we are of opinion the time stipulated in the deed is not unreasonable, and is no ground for setting it aside.
The clause, that the trustee should employ the defendant as one of the clerks in conducting the business, is not inconsistent with fair dealing, and does not constitute that reservation of an interest that could vitiate the deed. He has disposed of his entire pro *291 perty to pay his debts. He is more famiLiar with the Business than any other person, and more interested than any one who could he procured to attend to it. "We are not to presume, in advance, that a man will act dishonestly. We can see nothing in the arrangement indicative of a fraudulent intent. Burrell on Assign., 185, says: “Clauses in assignments, giving the trustees power, if they think proper, to employ the debtor as the agent or manager of the property for a limited time, and in subordination to the objects of the assignment, have been held valid.” He cites, in support of the principle, 7 Ala. Reports, 765. In England, assignments are constantly drawn, with clauses enabling the trustee to employ the debtor in winding up his affairs, and in collecting and getting in his estate, and carrying on his trade, and to allow him, out of the trust estate, such sums as they may think proper. He cites, in support of the principle, 5 English Law and Eq. Reports, 431. We think the principle a correct one.
The property has passed into the possession of the trustee — he is but the agent, subject to control. It is consistent with reason, and sustained by authority: 2 Hum., 272.
The power given the trustee to re-invest the funds so as to keep up the stock, if he thinks it to the interest of the creditors, is a proper discretion, under the circumstances surrounding the case; the proof shows, that the goods were not of the character that would command a ready market. The experience of every one who has been in the mercantile business, is, that *292 it is necessary to keep up the stock of those articles that will induce purchasers to call, so as to make general sales. It was a discretion given the trustee, which, from his business habits, it was presumed he would correctly exercise. It was clearly to the interest of the creditors to sell the goods conveyed for the best prices, and this could only be done by replenishing the stock. From the condition of the country at the execution of the deed, if the goods had been sold at auction, it would have been a sacrifice of the interest of the creditors; and in this provision we can see no fraudulent intent.
It is insisted, the admissions in the answer of the defendant, “that becoming satisfied he must fail, it was his duty to make a fair and equitable arrangement, by which all his creditors should realize something, rather than a few should satisfy themselves by a sacrifice of his property/’ is an evidence of a fraudulent intent to hinder and delay his creditors. In the case of Hefner vs. Medcalf, 1 Head, 578, this principle came in review before the Court; the Court say: “The words, ‘hinder and delay/ are to be taken in their legal or technical, and not in their literal sense, or no deed could stand where creditors were not provided for.” If this were otherwise, the right to prefer one creditor to another, where a debtor could not pay all, was defeated.
If it appeared, from his own acknowledgment, or otherwise, that his object was to defeat certain creditors entirely, in the collection of their debts, though in suit, by the assignment of all his property for the payment of his other creditors, what would that be, more than *293 what is implied in all assignments? That is the object always, when all cannot he paid. There is no other reason for allowing him to elect who he will pay — that is the essence and reason of the rule. If his purpose was to prevent a race of diligence among his creditors at law for his property, hy appropriating it to his preferred creditors, this would not he fraudulent, because it was just what he had a right to do.
It is insisted, by the complainants, there is.no proof in the record, showing the preferred debts are bona fide, and, in the absence of proof, the Court would presume they were fictitious and without consideration, and that this is a badge of fraud. The hill does not charge the consideration was colorable. No issue was made on this point; and, in- the absence of such a charge in the hill, we will presume that they were bona fide debts. The principle settled in the case of Smart and Wife vs. Waterhouse, 6 Hump., p. 156, is not applicable. In that case, the note had been transferred with a knowledge it was the property of the estate, and it had been fraudulently done to prevent the creditors of Richard Waterhouse from obtaining satisfaction of their debts. The Court held, it was incumbent on the defendant to show he gave some consideration for it. The extrinsic facts, in this case, do not show a fraudulent intent, on the part of the defendant. The circumstances under which he obtained the goods were such as to create suspicion in the minds of the dealers, and, from the extended purchases made hy the defendant, they appear to have been satisfied. He *294 said lie had a large amount of tobacco at Louisville. The facilities for obtaining information in such cases, is so easy and available, that every prudent man in trade would readily have availed himself of the means of ascertaining the truth of the statement. Such men have a keen sense of their own interest; and, if the depositions taken in this cause, of the agents, are true, they were the easy dupes of rather a common man. It is too late to avail themselves of any false representations he may have made to set aside the deed. These representations were made in reference to another transaction, and cannot avail the party anything in this suit. The defendant appears to have paid, on his purchase, five or six thousand dollars; and, in consequence of the prostration of business, was unable to sell his goods so as to meet his ^abilities.
From a careful analysis of the facts, we are satisfied that the assignment was not made to hinder and delay the creditors of the defendant. There is nothing, in the face of the deed, that renders it fraudulent in law.
We have been referred to many cases, in other State Courts, settling principles inconsistent with those determined in this case. The decision of our own Court is authoritative and conclusive of the question at issue. In the case of Heffner vs. Medcalf, referred to, the Court say: “The statutes of frauds of the different States, as well as their insolvent laws, are so dissimilar in their provisions, that we are unable to *295 determine wliat weight should he given to their decisions on those subjects, in a controversy under our laws.”
The decree of the Chancellor will he reversed, and the bill dismissed.